May it please the court and counsel. My name is Nate Nieman and I represent Diedrich Coleman in an appeal from the denial of the second successive post-conviction petition that was denied by Judge Patron in Cook County. Mr. Coleman argued on appeal at the trial court, aired by dismissing that second successive petition because he met the cause and prejudice test under Pitsenbarger. One of these claims was that trial counsel was ineffective for failing to call Anthony Williams as a witness. The second claim was that the state failed to correct the perjured testimony of Herbert Arch and both of these claims as indicated in the brief are factually related. Mr. Coleman has shown cause here below by demonstrating that there was some objective factor that impeded his ability to raise this issue at his initial post-conviction proceeding and that's the important thing here is the state talks in its brief about a number of rule is that it has to be raised in the initial petition. So when looking at that, that was in 1995 and the whole issue here with respect to the cause issue is that even though Mr. Coleman had in his possession the location of Mr. Williams in the Cook County jail and his inmate number and those things, by the time that it came time to file his initial petition in 1995, Mr. Williams had been released from the Cook County jail and the defendant had essentially lost contact with him. Now an investigator in his initial post-conviction did try to find him but was unable to do so. However, in 2016, they ran into each other on the prison yard and they got to talking and that's how this whole successive petition came about because he was able to obtain the affidavit that he would have needed under the law that was in time in 1995 to file a petition that was supported by the evidence that is required under the law. Now the court's right that or I'm sorry that the state's right that that he had this information but the distinction is that he didn't have the affidavit and the affidavit is what he would need to advance the petition beyond the initial stage because it wouldn't have been supported by anything if he hadn't obtained an affidavit for Mr. Williams and the first time that he could do that was when he ran into him on the prison yard in 2016. Well let me ask you about that particular point. Couldn't the defendant have raised this in his initial petition and simply explain why he couldn't attach an affidavit from Williams? Your honor, wouldn't that have been sufficient to get the ball rolling so to speak? Your honor, I think with respect to getting the ball rolling, I think that you're right. He could have attached his own affidavit saying I tried to find Mr. Williams, I couldn't and you know here's why I'm not attaching an affidavit but the problem is that that is just enough to get the ball rolling even if it got to the second stage. So if it advanced past the first stage, he's still going to have to have at least in 1995 as I explained in my brief, he's still going to have to have some evidence that is not hearsay as to this conversation that took place in order to advance it beyond that initial stage. Okay, well let's assume then for the sake of argument since we're having an oral argument today that you established cause as it relates to the Williams issue despite the lack of an affidavit early on. How would it make any difference that the case on direct appeal to our supreme court stated over and over and over that this evidence against the defendant was overwhelming and I don't know how you think any of this would make any difference and how the defendant could be prejudiced in the light of the overwhelming nature of the evidence here. Thank you, your honor. I've also tried to address this in my brief. The prejudice that Mr. Coleman would experience is not just the impeachment of Herbert Arch, the jailhouse informant, but it would show that the state had to put on a witness who committed perjury and the reason even if you take all of the evidence in the case that had already been entered and you add basically the fact that Mr. Arch had perjured himself as trial evidence, that undermines the evidence in the entire case because then the jury's thinking well if they're willing to put up this witness who said that he confessed to him in jail and that witness is not telling the truth, then the state would go to any length to obtain a conviction in this case. That's at least an argument that he would have available to him is an argument that the perjured testimony of Mr. Arch taints the entire presentation of the case. You're talking about the fact that the defendant would have an argument or could do this or could do that. Is there any kind of remedy that the defendant has not tried since 1989 in this case? He had two pro se post-trial motions, direct appeal to the Illinois Supreme Court with 14 claims of error, a denial of a writ of certiorari by the United States Supreme Court, a in the federal court denial of a writ for habeas corpus, and now these two post-conviction petitions. If hypothetically speaking, if this were affirmed, is the defendant, have we reached an end in terms of what he might attempt to do? Your honor, I can't answer that question because I don't know Mr. Coleman's intentions moving forward. I would freely acknowledge that he has filed a lot of challenges to his conviction and has collaterally attacked them, has attacked them directly through the direct appeal process, post-conviction process, etc. But I don't know what his plans are in the future with respect to future filings. Okay, well, I commend you for your work on his behalf and that's all the questions that I have. My colleagues, any questions? I have none. Well, if there's no further questions, I would rest on my brief and my argument and I would thank the justices very kindly for their time. Okay. May it please the court. May I begin? Assistant State's Attorney on behalf of the people of the state of Illinois and this court should affirm the trial court's proper denial of the petitioner's motion for leave to file his successive PC for several reasons. Most importantly, he has forfeited these claims for failing to raise them as you point out, Justice Labin, in any of his prior filings. Specifically, as to cause, he has failed to that's the securing of the affidavit of Williams. Several facts are undisputed here. They were teammates. He did know his name. He knew his inmate number. His attorney was aware of these things. They were both aware of the conversations that petitioner and his attorney had with Arch. They wrote the information down. Petitioner knew that Williams was known as the on the news and they had discussed their pending cases. So, with all of this information, if there was sufficient information, the petitioner knew enough about Williams' identity that he could have located them sooner and he did not have to wait until 1995 or 2016. What does the record reflect regarding trial counsel's decision on whether or not to call Williams? The affidavits submitted by petitioner indicate that, well, first of all, from Williams, he admits that they did have a conversation. He was interviewed. A handwritten statement was taken and trial counsel made a decision not to call him. We know from petitioner's own affidavit that they discussed calling Williams as a witness. In fact, it sounds like they had a few heated about that. And his trial counsel said, he is a risky witness for us to call. And it was revisited on another visit in the Cook County Jail between them. And what trial counsel told petitioner was, I have something better than Williams. I found and located Vasquez and he's agreed to testify in your trial. And Vasquez provided firsthand information of what petitioner described as a scam that Arch pulls on at least one other inmate in Cook County Jail. So trial counsel certainly had plenty of reasons why he felt, after discussing with his clients, reasons that he did not want to call Williams as a witness. And again, had Williams testified, let's not forget, he would have also been subject to cross-examination and his credibility too would have been before the jury, not just Arch's. So as I was saying with cause, I agree with you also Justice Labin that 122-2 does provide, this could have been raised sooner and he could have done his own affidavit and he could have attached. Hang on just a second. We're having some technical difficulties with my colleague, I believe. Okay. Okay. I'm sorry. I apologize. That was my Wi-Fi. I just jumped off for some reason, but I'll re-listen to the whole oral argument. So I assure you I haven't, I will not miss anything. Okay. Very good. No problem. It happens. Stuff happens. Proceed. Thank you, Justice. I was, pointing to 122-2 of the act where he could have filed an affidavit and attached it in support of his allegations, explaining everything that he was capable of explaining in the affidavit that's before this court today and explain why he could not secure that affidavit from Williams, which would have put him into the trial court posture before a judge who could have possibly given him discovery options or subpoena power where he could have located that Cook County jail number and found Williams, who we now know as a serial rapist, was in the Illinois Department of Corrections. He would have been locatable and he didn't need to wait to 1995. He could have done this while he was in possession of that information. He chose to wait until 1995 to file his first post-conviction petition. He has had an avenue to proceed immediately with a post-conviction petition on these claims and he chose not to. So he has failed to establish cause. He has not met his burden. And I think we've already started to touch on prejudice. What is the prejudice in this case? He would have to show that failure to raise these claims earlier so and again, beginning with the ineffective assistance of trial counsel. We've already discussed that. He is not able to show prejudice. He's not able to show deficiency first for all the reasons that I've already argued in the conversations that were had between him, his trial counsel about the trial strategy that we know was implied here because it's discussed in own affidavit. He put that forth for this court and for the trial court. How do you respond to counsel's argument about, you know, if we could show that the state was aware that they were putting on perjured testimony that that would have been so significant and enough to establish cause? And I'm paraphrasing, but you know the gist of it. Well, in general, I would start with that. That argument is somewhat conclusory because it doesn't point to parts of the record that support that. The fact that Williams may have been called as a witness, regardless of what he says, does not equate to Arch being committing perjury. One does not equal the other. As I've stated, had Williams been called, he also would have been subject to cross-examination. He would have been one witness giving testimony and Arch was a witness giving testimony. And both of those testimonies would have been judged by the jury for purposes of credibility. So it is not an absolute that when one witness says one thing and they're contradicted by another witness, that that means perjury has been committed. So I don't see how there can be such a leap. And I think, again, just as Lavin said, if this, then that. There is a lot of speculation involved in this argument. And there is no evidence that any perjury was committed. And that starts at the beginning of the analysis with the fact that Arch never received any leniency for testifying. There was no deal employed here. So what was his motivation to lie to the prosecutor, to the jury? There's just no evidence of that. And therefore, there is no evidence that he committed perjury. He's failed to establish that perjury occurred or that the state knowingly used any of that perjury. In fact, I think I've already hit on this, but in Williams' own affidavit, he describes Arch's statement to him as a scam, that he used on the state not to get back into the joint. So the evidence here has not even come close to establishing that perjury was committed by Arch. He also has not shown that Arch was an agent of the state or that Arch was a critical witness. So he's failed to show any prejudice in that respect. And then independent, to talk about the perjury prong a little bit, independent of Arch, because let's remember, in the closing arguments, the prosecutors in this case told the jury, please disregard Arch's testimony, because you have more than enough evidence to convict the petitioner on the evidence before you. So it's not as if facts were raised or testimony was given, and then the state honed in on it and that he was, that Arch was any type of critical witness in this case. And Justice Lavin is absolutely correct. The evidence here has been overwhelming, and this case has received great legal scrutiny over the decades. Here, three witnesses testified. Rose, Rico, and Terrell all testified. The petitioner confessed that he proceeds from the robbery of the drug house. Lorencia, the sister, Terrell and Rico all identified the gun as the murder weapon. That was petitioner's gun. Rico actually identified the gun as the gun, not only that he saw right before petitioner killed McCullough, but the gun that he was asked by petitioner to destroy. In addition to that, there was ballistics evidence that this murder weapon that killed McCullough. It was also consistent with the weapon that was used to kill Hale. Telephone records corroborated Rico and Rose's testimony that they had conversations in the Cook County Jail with petitioner. Also, Rose gave testimony that the petitioner, while he was in Cook County Jail, called her in an effort to get her to contact people to kill Terrell so he would be unable to testify against him. And then let's parcel out the motive evidence that the claims couldn't have been proved without Arch. It certainly could have, and it was. We have proof of other crimes with the killing of McCullough. Right there establishes there was a bad relationship between the two of them as the testimony elicited. But Terrell testified that petitioner and McCullough had a very threatening relationship with each other, and most recently they had had a falling out over drugs. And the petitioner himself testified to the bad blood, for lack of a better term, between him and McCullough when it came to the drug enterprise and the deal he had with the petitioner's sister. In addition to that, though, Detective Halewinski testified to the theft arrest from the Neatrox, where petitioner had committed that crime in exchange for $300 at the bequest of McCullough. And McCullough was never charged with anything. However, petitioner went to prison for a few years and served his time for that crime. There were other parts of the record and extensive evidence that proved motive, which was independent of any testimony from Arch. I would ask you to wrap up your remarks, please. Well, and I would say in light of that, that he has not established that he was prejudiced. And most importantly, he hasn't met his burden for this court to relax any of the procedural bars, allowing him to file a motion for leave to file his successive PC. If there are no questions for these reasons and the reasons in our brief, I ask that this court affirm the trial court's denial of petitioner's about his successive PC petition. No questions for me, either of my colleagues. No. Okay, let's hear a rebuttal from Mr. Neiman. Thank you, Your Honor. I want to address the the forfeiture and waiver issues. To the waiver issues. This is basically little consequence in this procedural posture because he can raise the claim if he meets the cause and prejudice standard, which is what we're talking about here. So if he doesn't, if he doesn't meet that, then the court can affirm. But if he doesn't meet it, then the waiver exception is invoked. So it doesn't really matter whether the claims are waived. Because usually, at the point of a successive petition, claims are waived anyway. With respect to the forfeiture issue, I did want to address that head on that the state does argue that he could have provided the court with his own affidavit and explained why he couldn't secure Mr. Williams affidavit and then ask the court for subpoenas for the jail. But that him information that he already and it wasn't until he was able to locate actually physically locate Mr. Williams in 2016 that that he was able to obtain the affidavit and secure that for his successive petition. So with respect to that, that was the first opportunity that he had to raise that. So if that was the first opportunity that he has to raise to raise that claim with appropriate evidence, then tell us tell us for in your own words for a couple of minutes, why the state is wrong when the state argues that the evidence against your client was overwhelming at trial. Well, Your Honor, I think as as the court earlier indicated, the court, the appellate court has determined previously that the the evidence was significant in this case. And I will freely acknowledge that that the that the case that the state's case was was pretty strong. But I I maintain that if during the course of trial, there was a witness who was discovered to have provided perjured testimony, that would have changed the entire dimensions of of the trial. And I think that and and again, you know, when we talk about potential prejudice, we're we're obviously we're obviously going to be thinking about things that have not actually happened. And I think that in this particular case, had the jury discovered that, then they would have potentially punished by finding Mr. Coleman guilty. So unless the court has any other questions, to address on rebuttal, I would ask you to respectfully reverse the trial court and remand for second stage proceedings on Mr. Coleman second successive petition. Okay, thank you. On behalf of my colleagues, I'd like to thank both of you for being good advocates for your clients and pursuing justice for your client and for the people of the state of Illinois, we will take this matter under advisement and issue an order or opinion forthwith. We are adjourned.